FAY FRUIT COMPANY V. FRANK TALERICO.

Decided May 22, 1901.

**1.—Sale—Inspection of Goods—Warranty—Fraud.**

Where goods are sold subject to inspection, there is no implied warranty of quality, but the maxim of caveat emptor applies; and where the buyer, with full opportunity, makes a careless inspection, or neglects to inspect at all, his position will, in the absence of fraud, be the same as if he had fully inspected.

**2.—Same—Fraud Vitiating Sale.**

Plaintiff received a carload of oranges which were shipped to him under a contract of purchase by which he had the right to inspect them as to quality before accepting them. He examined several boxes of the oranges, and finding them good, paid the shipper's draft which accompanied the bill of lading, but while removing the oranges from the car discovered that a large proportion of them were unsound and unfit for market, and at once offered to return the oranges to the seller's possession, and demanded a return of the money he had paid for them and for the freight thereon, and afterwards sued to recover the same, alleging that the seller had fraudulently so loaded the car as to deceive him and induce him to accept the oranges as sound. Held that plaintiff was entitled to have the issue of fraud submitted to the jury, and a refusal of the court to so submit it was reversible error.

Appeal from Bexar. Tried below before Hon. R. B. Green.

*Denman, Franklin & McGown,* for appellant.

*P. H. Swearingen,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Frank Talerico, against appellant, the Fay Fruit Company, to recover $537.47, alleged to have been paid by him for a carload of oranges, and for $325.80 freight alleged to have been paid by him on said carload, as well as for damages for breach of contract.

The plaintiff alleged in his petition that on the 20th day of March, 1900, he ordered from the Fay Fruit Company, through its local agent in San Antonio, Texas, a certain carload of oranges, subject to inspection by him upon their arrival in the city of San Antonio. That it was agreed that if, when the oranges were inspected by him, they were in a good merchantable condition, then, after their inspection and acceptance by him, he would pay the price for the oranges, to wit, $537.45, and the freight from the initial point to San Antonio, Texas, amounting to $325.80; and that the railroad company over whose road the shipment was made was instructed by the appellant company to permit him to inspect the oranges upon their arrival in San Antonio.

That for the purpose of deceiving plaintiff as to the condition of the oranges, and to induce him to receive and accept the same, notwithstanding they were unsound and unmerchantable, the fruit company so loaded its car of oranges as to deceive him and induce him to accept the oranges as sound. That the company shipped the oranges to "Shipper's Order, San Antonio, Texas," and drew upon plaintiff for the sum

of $537.47, with bill of lading attached to the draft, with instructions to the bank to surrender bill of lading to plaintiff upon his payment of the draft. That upon the arrival of the oranges, plaintiff by mistake paid the draft, took up the bill of lading, and unloaded the oranges before he discovered they were unsound and unmerchantable, and that upon discovering their condition he rejected the fruit and filed suit to recover the money paid by him, and for damages for breach of contract. The First National Bank of Los Angeles, Cal., the holder when paid, was also made a party defendant.

The Fay Fruit Company, appellant, answered denying the right of plaintiff to recover the moneys expended by him, and the damages alleged for the breach of the contract, upon the ground that the oranges were sold subject to inspection by plaintiff at San Antonio, Texas, and that, after the oranges arrived in San Antonio, they were inspected by him, the draft and freight paid, and that the contract thereby became executed between the parties, and plaintiff estopped from denying that the company had complied with its contract, and from recovering damages arising from the alleged defective condition of the oranges. The Fay Fruit Company made the Galveston, Harrisburg & San Antonio Railway Company a party defendant, and asked judgment over against it in the event judgment was recovered by plaintiff.

The case was dismissed as to the First National Bank of Los Angeles, Cal., and a plea to the jurisdiction of the court, interposed by the railway company, was sustained. The case was then tried before a jury, and a judgment was rendered upon their verdict in favor of plaintiff for $569.37, from which this appeal is prosecuted.

It is apparent from the pleadings as well as the evidence that the carload of oranges was sold by appellant's broker in the city of San Antonio, with the express understanding that they were to be shipped from California to San Antonio, Texas, where they were to be inspected by the appellee, and received and paid for by him, if upon inspection they should prove satisfactory. The evidence shows that the oranges were shipped by appellant from San Gabriel, Cal., subject to its order, to San Antonio, Texas. That when the car containing them arrived, the agent of the road over which they were shipped notified appellee at San Antonio of the arrival; that upon receiving such notice he went to the depot, the car containing the oranges was opened by the agent of the railroad company, and he was given authority and ample opportunity to fully inspect and ascertain the condition of the fruit, and determine for himself its quality. After opening several of the boxes in which the oranges were packed, and examining the fruit, and finding that contained in the boxes so opened was sound, and of the quality purchased, he went to the bank in San Antonio, to which the draft with the bill of lading attached was sent for collection, paid the same, received the bill of lading, returned to the depot with it, paid the freight on the carload, received and took possession of the oranges, and after transporting several wagon loads to his storehouse, then discovered that a great number

of them were unsound and unfit for market. Whereupon he immediately offered to restore the oranges to appellant's possession, and demanded that the money paid on the draft and for the freight be refunded to him, and upon appellant's refusal to receive the oranges and refund the money, the appellee transported the balance of the fruit to his warehouse, and sold all that was marketable upon appellant's account, and after crediting it with the proceeds of the sale, brought this suit.

*Opinion.*—In the ordinary relation of vendor and vendee, when neither party indulges in fraudulent misrepresentations or devices, the parties are in a position to protect their own interests. They generally deal with each other at arm's length, and each relies upon his own judgment in determining whether to conclude or reject the sale. Hence, the rule of the law of sale is embodied in the maxim, caveat emptor, and it provides that there is ordinarily no warranty for the quality, unless one is expressly demanded or given. This maxim, however, can be applied with justice only where it is reasonably possible for the buyer to discover the defects in the goods for himself. Whenever the buyer has the opportunity of inspecting the goods, and the defects could be discovered by him, if discoverable at all, the maxim applies, and he is required to exercise his own judgment. There will be no implied warranty of quality in such cases. And no warranty of quality will be implied in such a case, even when the defects are latent and can not be discovered by the buyer after the closest inspection, and the buyer is without remedy, unless the seller is guilty of fraud, or the buyer has protected himself by an express warranty. But if the buyer has not an equal opportunity with the seller to inspect the goods, then the reason of the maxim fails, and it is but just to the buyer that an implied warranty of quality should be recognized in his favor. Tied. on Sales, sec. 187; Kellogg B. Co. v. Hamilton, 110 U. S., 108; Battalia v. Thomas, 5 C. C. A., 565; Barnard v. Kellogg, 10 Wall., 383; Parks v. O'Conner, 70 Texas, 387. If the buyer makes a careless inspection, or neglects to inspect at all, his position will be the same as if he had fully inspected, in the absence of fraud. In the case of Carson v. Baillie, 19 Pennsylvania, 375, 380, the sale was of lard grease. The buyer inspected several of the packages, declined to inspect further, and bought the lot. He sued for a breach of warranty, alleging that a part of the grease was inferior and adulterated. It was held that there was no warranty. The court said: "When goods are sold on inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold and no other shall be delivered." 2 Benj. on Sales (Amer. Notes by Corbin), sec. 966, and note 23.

In the case at bar there was no express warranty, and as has been seen, the sale of the oranges was subject to the inspection of the buyer,— expressly made so by the contract. He was given full opportunity to make the inspection before accepting and paying for the goods, and

if he failed, before consummating the purchase, to exercise his right, as well as duty, of inspection, it is his own fault, from which he is entitled to no relief, unless he was thrown off his guard and induced to make only a partial inspection by the alleged fraud of the seller in placing boxes containing the good fruit in the part of the car most accessible, and those containing the bad in the part least accessible to inspection. This issue of fraud the trial court, though requested by appellant, failed to submit to the jury, and as this is the only issue under the law upon which the plaintiff could recover in this case, the judgment appealed from is reversed and the cause remanded.

*Reversed and remanded.*